1
2
3
4

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

5
6

_____
                                        )
MOMENT, LLC,                            )
                                        )
            Plaintiff,                   )                3:16-cv-00297-RCJ-VPC
                                        )
      vs.                               )
                                        )                **ORDER**
MAMMOTH OUTDOOR SPORTS, INC. et         )
al.,                                    )
                                        )
            Defendants.                  )
_____ )

        This case arises out of an alleged breach of a contract involving the purchase of ski

equipment. Pending before the Court are a Motion to Remand (ECF No. 8) and two Motions to

Dismiss (ECF Nos. 6, 7). For the reasons given herein, the Court grants the motions to dismiss in

part and denies them in part, and it denies the motion to remand.

**I.      FACTS AND PROCEDURAL HISTORY**

        Plaintiff Moment, LLC ("Moment"), a manufacturer of ski equipment, entered into five

different contracts with Defendant Mammoth Outdoor Sports, Inc. ("Mammoth") to sell and

deliver ski equipment on October 30 and 31, 2013. (Compl. ¶¶ 12–13, 15–19, ECF No. 4). The

amount of the sales as recorded on five invoices totals $118,743.03. (*Id.* ¶¶ 15–19). Moment

alleges that Defendant Sierra Lifestyle, Inc. ("SLI") owns Mammoth and that Philip Hertzog

owns both Mammoth and SLI. (*Id.* ¶¶ 14, 22). One of the Defendants, presumably Mammoth,[1] sent a check in the amount of $7,000 to Moment on October 31, 2013. (*Id.* ¶ 20). Upon delivery of the products, Hertzog signed an agreement and terms sheet, which set forth applicable charges for returns and late payments. (*Id.* ¶¶ 23–24).

On February 21, 2014, Moment sent an e-mail to Mammoth to inquire about a payment plan because Defendants had made no payments since October 13, 2013. (*Id.* ¶ 27). The parties agreed to a payment plan, but Mammoth failed to provide payments according to the plan. (*Id.* ¶¶ 29–30). From May 1, 2014 to October 20, 2015, Moment contacted Mammoth numerous times to inquire about payment. (*Id.* ¶¶ 32–51). During that period, Mammoth made multiple assurances that it would have money to pay the debt, including by obtaining capital through various financing sources. (*Id.*). Other than the first payment, Moment has received no further payments from Defendants. (*Id.* ¶ 55). Moment alleges that Defendants negotiated in bad faith by promising to pay the debt with no intent to do so. (*Id.* ¶¶ 52–54).

Moment makes the following claims against Defendants: (1) five claims of breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) unjust enrichment/quantum meruit; and (4) fraudulent misrepresentation. Moment filed the case in Nevada state court and Defendants removed. Moment moves the Court to remand the case to state court. Defendants move the Court to dismiss Moment's claims for lack of personal jurisdiction, insufficient service of process, and failure to state a claim.

///

///

---

[1] The Complaint identifies two Defendants—Mammoth and SLI—but often fails to distinguish between the two in its allegations. The Court will assume that the Complaint refers to Mammoth when it mentions only one Defendant.

## II.     PERSONAL JURISDICTION

### A.     Legal Standards

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment, as Nevada does, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only address federal due process standards, *see Boschetto*, 539 F.3d at 1015. Technically, Nevada's long-arm statute restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). But Nevada's Due Process Clause is textually identical to the Due Process Clause of the Fourteenth Amendment in relevant respects, *compare* U.S. Const. amend. XIV, § 1, *with* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009). Until the Fourteenth Amendment was adopted in 1868, no federal due process clause applied to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.). The Declaration of Rights comprising Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush*

*State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993). In summary, the exercise of personal jurisdiction in Nevada need only comport with the Due Process Clause of the Fourteenth Amendment.

### 1. General Jurisdiction

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. In the mid-to-late-Twentieth Century, the federal courts developed a rule that general jurisdiction existed over a defendant in any state with which the defendant had "substantial" or "continuous and systematic" contacts such that the assertion of personal jurisdiction over him would be constitutionally fair even where the claims at issue were unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). A state court has general jurisdiction over the state's own residents, for example. The Supreme Court has clarified, however, that general jurisdiction exists only where the defendant is at "home" in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–62 (2014). The Court noted that "continuous and systematic" contacts alone are not enough to create general jurisdiction without more. *See id.* The quoted phrase was in fact first used in the context of a specific jurisdiction analysis. *See id.* at 761 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "Accordingly, the inquiry under *Goodyear* is not whether a foreign [defendant's] in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that [defendant's] 'affiliations with the State are so "continuous and systematic" as to render [the defendant] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

1    **2.    Specific Jurisdiction**

2    Even where there is no general jurisdiction over a defendant, specific jurisdiction exists

3    when there are sufficient contacts with the forum state such that the assertion of personal

4    jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*

5    *Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The standard has

6    been restated using different verbiage. *See World-wide Volkswagen Corp. v. Woodson,* 444 U.S.

7    286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere

8    likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's

9    conduct and connection with the forum State are such that he should reasonably anticipate being

10   haled into court there."); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each

11   case that there be some act by which the defendant purposefully avails itself of the privilege of

12   conducting activities within the forum State, thus invoking the benefits and protections of its

13   laws."). From these cases and others, the Court of Appeals has developed a three-part test for

14   specific jurisdiction:

15        (1)  The non-resident defendant must purposefully direct his activities or
          consummate some transaction with the forum or resident thereof; or perform
16        some act by which he purposefully avails himself of the privilege of conducting
          activities in the forum, thereby invoking the benefits and protections of its laws;

17
          (2) the claim must be one which arises out of or relates to the defendant's forum-
18        related activities; and

19        (3) the exercise of jurisdiction must comport with fair play and substantial justice,
          i.e. it must be reasonable.
20
     *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,
21
     802 (9th Cir. 2004)) (internal quotation marks omitted).
22
          The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes
23        both prongs one and two, the defendant must come forward with a "compelling
          case" that the exercise of jurisdiction would not be reasonable.  But if the plaintiff
24

fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted).

The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2014) ("[T]he relationship must arise out of contacts that the 'defendant *himself* ' creates with the forum State." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in *Walden*)). The second and third prongs of the *Calder*-effects test are conjunctive, not disjunctive. That is, a defendant must not only cause harm to a person who he knows will feel a "judicially sufficient amount of harm" in the forum state (the third prong), *see Yahoo! Inc.*, 433 F.3d at 1207, the intentional activity must be directed to the forum state itself (the second prong).  Activity is not "aimed at" a forum state merely because it is expected that its effects will be felt there, otherwise the third prong of the *Calder*-effects test would swallow the second.  The prongs are distinct and conjunctive.

The third prong is a seven-factor balancing test, under which a court considers:

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

1    *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor*

2    *Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)) (internal quotation marks omitted).

3          "When adjudicating a motion to dismiss brought pursuant to Federal Rule of Civil

4    Procedure 12(b)(2), a court may consider extrinsic evidence—that is, materials outside of the

5    pleadings, including affidavits submitted by the parties." *Stewart v. Screen Gems-EMI Music,*

6    *Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922

7    (9th Cir. 2001)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

8    "Where . . . the motion is based on written materials rather than an evidentiary hearing, the

9    plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374

10   F.3d at 800 (internal quotation omitted).

11         **B.    Analysis**

12         Defendants argue that Moment has failed to plead sufficient facts to show that the Court

13   has personal jurisdiction over SLI. Specifically, they argue that "[p]ersonal jurisdiction does not

14   exist over SLI merely because it is the holding company of a California corporation that

15   purchased merchandise from manufacturer based in Nevada." (Mot. to Dismiss, 3, ECF No. 7).

16   They provide no authority to support their argument. None of Moment's allegations suggest that

17   SLI has continuous and systematic contacts with Nevada that would give the Court general

18   jurisdiction over SLI; however, sufficient contacts exist to create specific jurisdiction over SLI in

19   this case.

20         Moment has established that SLI purposefully directed its activities at the forum state. In

21   its Complaint, Moment alleges that Philip Hertzog owns SLI and Mammoth and that SLI owns

22   Mammoth. (*See* Compl. ¶¶ 14, 22). In an e-mail sent from Hertzog to Moment, Hertzog

23

24

informed Moment that SLI had purchased Mammoth. (*See* E-mail, 52, ECF No. 17-1).[2] Hertzog, representing himself as the managing director of SLI, assured Moment that "[w]e are handling the secured creditors and desire to work out something with your clients . . . . We are able to make monthly payments . . . ." (*Id.*). SLI made these assurances intentionally and expressly aimed them at Moment, a Nevada corporation. SLI knew that if it misrepresented its ability to pay the debts, then the harm caused by the misrepresentation would be suffered in Nevada. While not all of Moment's claims arise from SLI's activities directed at Nevada, certainly its claim of fraudulent misrepresentation does in part and possibly other claims, depending on SLI's relationship with Mammoth and the alleged debts. Defendants fail to make a compelling argument that exercising personal jurisdiction over SLI would be unreasonable, if Defendants even attempt to make the argument at all. Finally, requiring Moment to bring suit against SLI in another forum would be inefficient and impede Nevada's interest in adjudicating a dispute brought by one of its residents.

SLI's contacts with Nevada are sufficient to give the Court specific jurisdiction over SLI. The Court denies the motion to dismiss for lack of personal jurisdiction.

## III.   SERVICE OF PROCESS

Defendants argue that Moment's service of process was insufficient and, thus, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(5). A plaintiff may serve a domestic corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows an individual to be served by "following state law . . . in the state where the district court is located or where service is made." Moment argues that it

---

[2] The Court may consider this evidence in a motion to dismiss for lack of personal jurisdiction. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

served Defendants in compliance with both Nevada law, where this Court is located, and with California law, where service was made.

Moment argues that it properly served Defendants under NRS 14.020; however, NRS 14.020 applies only to corporations "doing business in [Nevada]," whether created in Nevada or another state, and requires such corporations to have "a registered agent who resides or is located in [Nevada]." § 14.020(1); *see also* NRS 80.070. Neither the statute nor case law defines what "doing business in" the state means, but it appears to refer to businesses with property or a physical location in the state. The statute requires service to be made to the agent personally or "a person of suitable age and discretion at the most recent street address of the registered agent," § 14.020(2), which is defined as "the actual physical location in [Nevada] at which a registered agent is available for service of process," § 14.020(6)(b). Although Mammoth has done business with Moment, which is a Nevada corporation, no evidence shows that Mammoth or SLI have any property or offices in Nevada or are registered as Nevada businesses. Defendants also have not designated a registered agent in Nevada. As a result, Defendants were not "doing business in" Nevada and NRS 14.020 does not apply.[3]

Nevada Rule of Civil Procedure 4(d)(2) allows service on "an unregistered foreign entity" that has no officer in Nevada "by delivery to the secretary of state or the deputy secretary of state" a copy of the summons and complaint and "by posting a copy of said process in the office of the clerk of the court in which such action is brought." Nev. R. Civ. P. 4(d)(1)-(2).

---

[3] NRS 80.080 also does not apply: "Service of process on a foreign corporation owning property or doing business in this State shall be made in the manner provided in NRS 14.020 and 14.030." NRS 14.030 allows a corporation that has not appointed a registered agent to be served by delivering a copy of the summons and complaint to the Secretary of State, but Moment does not allege it has complied with this statute.

Moment does not argue or present evidence that it complied with this rule. As a result, service of process on Defendants was insufficient under Nevada law.

Moment also argues that it properly served Defendants under California law. California Code of Civil Procedure § 416.10 provides many options for serving a corporation, but only one applies here. That option allows delivery of a copy of the summons and complaint to any person designated as agent by the corporation, as authorized under Section 1701 of the California Corporations Code. *See* Cal. Civ. Proc. Code § 416.10(d); Cal. Corp. Code § 1701. Moment does not allege that it personally served a designated agent, but California Code of Civil Procedure § 415.20 allows service "in lieu of personal delivery" to an agent specified in § 416.10 "by leaving a copy of the summons and complaint during usual office hours in [the agent's] office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." § 415.20(a). The papers "shall be left with a person at least 18 years of age, who shall be informed of the contents thereof." *Id.*

Philip Hertzog is the registered agent for both Mammoth and SLI, with an address listed for both Defendants as "1331 Rocking W Drive Bishop CA 93514." (Doc., 2–3, ECF NO. 17-3). On May 2, 2016, Moment served a copy of the summons and complaint on "Courtney (manager)" at the address listed for Mammoth and SLI.[4] (Decls. Personal Serv., 8–9, ECF No. 6-1). The same day, Moment mailed copies by first-class, postage-prepaid mail to Hertzog at the address listed for Mammoth and SLI. (Decl. Mailing, 4, ECF NO. 17-2).[5]

---

[4] The declarations do not state whether Moment served Courtney during usual office hours, whether Courtney was eighteen years of age, or whether the server informed Courtney of the contents, but Defendants do not dispute that Moment complied with the statute in these respects.

[5] The Declaration of Mailing states that the copies were sent to "Sierra Life Style and Mammoth Outdoor Sports: Phillip Hertzog," without including the actual address they were sent to, (*id.*),

Defendants argue that service was ineffective because Courtney was not an agent authorized to receive service and was not "in charge" of the office. According to Hertzog, Courtney "is employed by [SLI] as a supervisor. She is not a manager, officer or director of [SLI]. She was not authorized to accept service of a summons for this case or any other case. She has no current affiliation with [Mammoth] and has no authority for that company, either." (Decl. Philip Hertzog, ¶ 4, ECF No. 6-1). However, section 415.20(a) allows for service to "the person who is *apparently* in charge." Moment's process server gave the papers to Courtney, a person he believed was a "manager" at the address where both Mammoth and SLI are located. Whether or not Courtney was actually in charge, in the server's view, Courtney was "apparently in charge" and accepted the papers. No evidence indicates that the process server had any reason to believe Courtney, a supervisor, was not "in charge." Moment then satisfied the requirements of section 415.20(a) by mailing a copy of the papers to Hertzog at Defendants' address. Thus, under California law service of process was sufficient. The Court denies the motions to dismiss for insufficient service of process.

## IV.   MOTION TO REMAND

Moment moves the Court to remand the case to state court because Defendants failed to remove the case within thirty days of receiving the Complaint. *See* 28 U.S.C. § 1446(b) ("The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."). As the Court has determined, on May 2, 2016, Plaintiff properly served Defendants by serving the papers on Courtney and mailing copies to their agent, Philip Hertzog. However, California Code of Civil Procedure § 415.20, the statute under which Moment effected service, states that "[s]ervice of a summons in this manner is

---

but Defendants do not dispute that the copies were sent to the same address where Courtney was served.

deemed complete on the 10th day after the mailing." § 415.20(a). Thus, service on Defendants was not complete until May 12, 2016. Defendants removed to this Court on June 2, 2016, just twenty-one days later.

Moment cannot successfully argue that service was complete on May 2, 2016 because section 1446(b) states that the defendant must receive the complaint "through service *or otherwise*." Whenever Hertzog received the papers,[6] he received them through Moment's attempt to serve him with the papers, not through some other means. Defendants' removal was timely. The Court denies the motion to remand.

## V.   FAILURE TO STATE A CLAIM

### A.   Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are

---

[6] No evidence shows that Hertzog received the papers given to Courtney on May 2, the day Courtney accepted them. Also, it is unlikely, and Moment does not allege, that Hertzog received the papers sent by mail the same day that Moment mailed them.

merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory, but also must allege the facts of the plaintiff's case so that the court can determine whether the plaintiff has any basis for relief under the legal theory the plaintiff has specified or implied, assuming the facts are as the plaintiff alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

1  **B.    Analysis**

2  1.    Breach of Contract

3  SLI argues that Moment failed to state a claim of breach of contract because Mammoth,

4  not SLI, was the party to the contracts. As a general rule, "when one corporation sells all of its

5  assets to another corporation the purchaser is not liable for the debts of the seller." *Vill. Builders*

6  *96, L.P. v. U.S. Labs., Inc.*, 112 P.3d 1082, 1087 (Nev. 2005). However, one of four exceptions

7  to the rule includes "where the purchaser expressly or impliedly agrees to assume such debts."

8  *Id.* Here, Moment alleges that SLI owns Mammoth, (*see* Compl. ¶¶ 14, 22), and it attaches to its

9  motion evidence that SLI likely agreed to assume Mammoth's debts to Moment, (*see* E-mail, 52,

10  ECF No. 17-1),[7] but it fails to allege in its Complaint that SLI agreed to assume Mammoth's

11  debts. Moment also does not allege that Mammoth sold all of its assets to SLI. Moment's

12  allegations against SLI are insufficient. The Court grants the motion to dismiss the breach-of-

13  contract claims as to SLI, with leave to amend. In general, Moment's allegations pertaining to

14  the relationship between Mammoth and SLI and SLI's involvement in the claims lack specificity

15  and clarity. The Court admonishes Moment to clarify its allegations in this regard if it chooses to

16  amend the Complaint.

17  2.    Breach of Implied Covenant of Good Faith and Fair Dealing

18  Mammoth argues that Moment failed to state a claim because it alleges only that

19  Defendants failed to pay their debts, which is strictly a contractual matter. Moment does not

20  specify whether its claim is a claim based in contract or tort, but the Court will construe it as a

21  contractual claim. All contracts contain an implied covenant of good faith and fair dealing. *A.C.*

22

23  [7] Hertzog, representing himself as the managing director of SLI, assured Moment that "[w]e are
handling the secured creditors and desire to work out something with your clients . . . . We are

24  able to make monthly payments . . . ." (*Id.*).

*Shaw Const., Inc. v. Washoe Cty.*, 784 P.2d 9, 9 (1989). A contractual breach of the covenant of good faith and fair dealing arises when "terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). Although Moment alleges that Defendants made misrepresentations about its intent and ability to satisfy the contract, it does not allege that Defendants complied with the literal terms of the contract. In fact, Moment alleges that Defendants breached the contract, which negates the possibility of a valid claim of a contractual breach of the covenant of good faith and fair dealing. The Court grants the motion to dismiss the claim. The Court grants the motion without leave to amend because a claim based in contract is futile.

       3.      Unjust Enrichment/Quantum Meruit

The elements of an unjust enrichment claim, or "quasi contract," include the following: "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quotation omitted). A claim of unjust enrichment "is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* (quotation omitted). "The doctrine of unjust enrichment . . . applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for." *Id.* (quotation omitted).

Here, a claim of unjust enrichment is unavailable because Moment alleges that an express, written contract (as reflected in five invoices) existed between the parties. The Court grants the motion to dismiss as to both Defendants, with leave to amend.

4.      Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, a plaintiff must allege the following elements:

> (1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation.

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). In claims involving fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Nev. R. Civ. P. 9(b). The complaint must include "averments to the time, the place, the identity of the parties involved, and the nature of the fraud." *Rocker v. KPMG LLP*, 148 P.3d 703, 708 (Nev. 2006) (internal quotations omitted), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Nev. R. Civ. P. 9(b).

Moment has stated a claim of fraudulent misrepresentation against Mammoth.[8] First, Moment alleges that Mammoth made several false representations, including that it would be able to pay for the merchandise by using various private investment vehicles. Moment provides specific representations made by Mammoth on specific dates. (*See, e.g.*, Compl. ¶¶ 45–49).

---

[8] Once again, the Court infers that the allegations are made against Mammoth, not SLI.

Second, Moment alleges that Mammoth knew its representations were false. Third, Moment alleges that Mammoth intended to induce Moment to rely on the misrepresentations and that Moment relied on the misrepresentations. Fourth, Moment alleges that it suffered damages in excess of ten thousand dollars. The second and third allegations lack particularity, but Moment may aver them generally. Nev. R. Civ. P. 9(b).

Although these allegations are sufficient against Mammoth, they are insufficient against SLI. In the Complaint, Moment fails to make any specific allegations against SLI as to this claim. The Court dismisses the claim as to SLI, with leave to amend. As the Court admonished above, Moment needs to clarify any allegations it wishes to make against SLI.

### CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 6, 7) are GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Motion to Remand (ECF No. 8) is DENIED.

IT IS SO ORDERED.

Dated:  March 3, 2017.

_____
ROBERT C. JONES
United States District Judge